UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREANA MYLES,<br><br>                    Plaintiff,<br><br>        v.<br><br>WEST CONTRA COSTA UNIFIED<br>SCHOOL DISTRICT, et al.,<br><br>                    Defendants. | Case No.  23-cv-01369-AGT<br><br>**ORDER ON MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 15, 22 |

Plaintiff Breana Myles alleges that she was sexually assaulted and harassed by a fellow student, who had been previously reported for such misconduct.  Her complaint includes federal civil rights claims, discrimination claims, and California state law claims.  Currently pending before the Court are two motions to dismiss, one filed by defendant West Contra Costa Unified School District ("the District" or "WCCUSD") and the other by defendants Kibby Kleiman and Ryan Kolb.  The Court grants in part and denies in part the motion filed by the District and grants the motion filed by defendants Kleiman and Kolb.

I.    **BACKGROUND**

    A.  **The Parties**

Myles was a student at Pinole Valley High School (PVHS) in the District.  Dkt. 1, Compl. ¶ 14.  Her claims are against the District, PVHS principal Kibby Kleiman, PVHS assistant principal Ryan Kolb, and Bay Area Community Resources, Inc. (BACR), arising in part from incidents with male student Michael Day ("Day") at PVHS.[1]

---

[1] BACR answered the complaint.  Dkt. 20.

**B.  The Incidents Involving Myles**

Myles describes two incidents involving Day.  The first occurred "[o]n or around December of 2021" when Day allegedly "approached her, aggressively grabbed her by her arm and ordered her to perform oral sex on him [and when she] refused, Day threatened her, pulled her by her hair to a secluded location on the PVHS campus and physically forced her to orally copulate him."  *Id.* ¶ 18.  The second incident occurred "[o]n or around January of 2022" when Day allegedly "approached her, grabbed her aggressively by her arm and began pulling her down the hallway.  Breana struggled with Day, eventually breaking free from his grasp and running into the PVHS Student Health Center (SHC)."  *Id.* ¶ 19.  Plaintiff reported the incidents to SHC staff and Kleiman, and "informed Kleiman that Day had also sexually harassed and assaulted other female students at PVHS."  *Id.* ¶ 21.  These other incidents with female students at PVHS occurred prior to the above incidents.  *Id.* ¶¶ 27–31.

**C.  After the Incidents**

Myles alleges that "WCCUSD and/or BACR staff interviewed" her "[a]pproximately one day after [she] reported Day's harassment and assault," during which she provided further details regarding "bullying, sexual harassment and assaults" by Day.  *Id.* ¶ 22.  She claims Defendants violated the California Education Code, "applicable board policies and administrative regulations," and mandatory reporting duties.  *Id.* ¶¶ 23–24.

During a meeting between Kolb and Myles' parents, after the incidents, "Kolb informed [Myles'] parents that the Pinole Police Department (PPD) was already investigating prior student reports that Day sexually assaulted them on campus."  *Id.* ¶ 25.

Myles claims she "suffered severe emotional distress which has required psychological care."  *Id.* ¶ 31.  Additionally, Myles was "subjected to taunting and bullying by other PVHS

students in direct retaliation for reporting Day's conduct," and "was forced to change her class schedule." *Id.* ¶ 32.  Myles also alleges "her grades dropped significantly." *Id.* ¶¶ 79, 85.

## II.    LEGAL STANDARD

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court accepts as true the factual allegations in the complaint and construes them in the light most favorable to the plaintiff.  *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Legal conclusions, however, unlike factual allegations, are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  Regarding dismissal, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## III.   DISCUSSION

### A.  Section 1983 claims against Kleiman and Kolb

Myles asserts civil rights claims against Kleiman and Kolb "in their personal capacities," under 42 U.S.C. § 1983.  Compl. ¶¶ 33–56; Dkt. 24 at 6.  The complaint refers to several theories of liability under Section 1983, including "Actions Under Color of Law" based on deliberate indifference, "Failure to Train," "Ratification," and "Statutory Violation of Title IX."  Compl. ¶¶ 33–56.  Defendants move to dismiss the Section 1983 claim based on three of these theories— failure to train, ratification, and statutory violation of Title IX.  Dkt. 22 at 2.  Because Defendants did not move to dismiss Myles' Section 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a claim based on that theory moves beyond the pleading

stage.  *See* Compl. ¶¶ 33–38; Dkt. 22 at 5–8; Dkt. 24 at 5–7; Dkt. 26 at 2–4.  The Court will evaluate each theory at issue here to determine whether or not they may proceed as pleaded.[2]

### 1.    Statutory Violation of Title IX

Myles' complaint states "Kleiman and Kolb . . . are liable for Title IX violations by discriminating against Breana on the basis of sex." Compl. ¶ 50; *see* 20 U.S.C. §§ 1681 *et seq*. Kleiman and Kolb, however, cannot be sued as individuals under Title IX.  *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (noting that Title IX "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals"). Section 1983 "is not itself a source of substantive rights" but "provides a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  Myles refers to the Fourteenth Amendment as a basis for her Section 1983 claim.  *See* Dkt. 24 at 5–6. More importantly, Myles appears to concede that Title IX cannot be the predicate basis for her Section 1983 claims against individual defendants.  *Id*.  The Court therefore grants Defendants' motion to dismiss the separate statutory violation of Title IX theory without leave to amend.

### 2.    Failure to Train

Myles contends that the individual defendants' "failure to train district personnel caused the deprivation of [Myles'] right to be free from sexual harassment as school" under Section 1983. Dkt. 24 at 7; *see* Compl. ¶¶ 39–41.  She contends that the individual defendants "are responsible to ensure student supervision, were aware of pervasive sexual harassment of female students on the PVHS campus [], were aware the Pinole Police department was already investigating prior

---

[2] "[G]enerally speaking, when a plaintiff makes two different arguments in support of one basis for relief, the plaintiff is not bringing two separate claims." *Quinto-Collins v. City of Antioch*, 2022 WL 18574, at *2 (N.D. Cal. Jan. 3, 2022)); *see, e.g.*, *Bell v. Krol*, 2023 WL 8101982, at *4 (N.D. Cal. Nov. 21, 2023) (evaluating "theories individually, in the event that it helps focus the parties' litigation efforts").

reports of Day's sexual assaults of other students on campus, and were aware of the risk Day posed to female students including Breana." Dkt. 24 at 7–8 (citing Compl. ¶¶ 25, 26, 29, 40, 46). Under Section 1983, individual defendants "cannot be held liable for the acts of their reports under a *respondeat superior* theory." *Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022). A plaintiff must sufficiently allege that a defendant was "deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (citing *Connick v. Thompson*, 563 U.S. 51, 59 (2011)).

The individual defendants argue that "[Myles'] rights were deprived by Day" rather than "the administrators' subordinate," and that the District, not "individual site administrators," makes "decisions about who to train and what training to provide." Dkt. 22 at 5–6. The individual defendants rely on *M.M. v. San Juan Unified School District*, that Myles failed to "describe the policies that existed, establish each Defendant's personal authority/responsibility to train subordinates and/or articulate the policies to students, or assert how such policies were communicated and why this communication was inadequate." Dkt. 26 at 2 (quoting *M.M. v. San Juan Unified Sch. Dist.*, 2020 WL 5702265, at *12 (E.D. Cal. Sept. 24, 2020)). The Court agrees. Myles must provide more than conclusory allegations to state a plausible failure to train claim. The Court accordingly grants the individual defendants' motion to dismiss based on the failure to train, with leave to amend.

### 3.    Ratification

Myles also alleges a ratification theory under Section 1983, which is based on "acquiescence in the constitutional deprivation of which a complaint is made." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000). An individual is liable "if he knowingly refused to

terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury." *Dubner v. City & County of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The acquiescence must have "a sufficient causal connection" to the alleged constitutional violation. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

Kleiman and Kolb contend that absent are allegations they "had actual knowledge of Plaintiff being sexually assaulted and then ratifying that conduct." Dkt. 22 at 6. Moreover, Day is not an employee and thus the ratification theory does not apply to his actions. *See id.* at 7. Myles responds that her claims "focus on Kleiman and Kolb's acquiescence and participation in the school district's longstanding *de facto* policy and practice of concealing, failing to report, document or adequately investigate, and of intentionally underreporting known incidents of student sexual harassment prior to [her] abuse." Dkt. 24 at 8 (quoting Compl. ¶ 47). Moreover, the Kleiman and Kolb "received multiple reports from female students during the 2021/2022 school year reporting Day's sexual harassment and assault, but failed to timely intervene, investigate or report the alleged abuse to law enforcement and permitted Day to have unsupervised access to Breana at PVHS." Compl. ¶ 46. While the Court agrees Day's conduct is not the proper basis for a ratification claim, Myles alleges that the Kleiman and Kolb ratified conduct by other district personnel. *See id.* ¶¶ 46, 48, 49.

Myles, however, does not sufficiently allege that public employees, other than the individual defendants, committed a Constitutional violation and Kleiman and Kolb acquiesced to that conduct. Myles' alleges "administrators' concealment of the misconduct" and other failings

of the individual defendants such as a "failure to document, report, investigate, or respond." *Id.*
¶ 48. Myles fails to identify the employees (other than the individual defendants) who committed
the violation, nor does she allege any specific incident where an employee committed a violation,
and that Kleiman and/or Kolb knew of the violation and failed to act to prevent harm. Myles'
allegations do not state a plausible claim for relief based on a ratification theory. Kleiman and
Kolb's motion to dismiss is granted as to the ratification theory, with leave to amend.

### B. Sex-Based Discrimination Claims Against the District

Myles next alleges violations of Section 220 of the California Education Code, for
"intentional discrimination on the basis of sex, which includes sexual harassment," and of Title IX
for sex-based discrimination by the District. *Id.* ¶¶ 58, 62. Section 220 provides that "[n]o person
shall be subjected to discrimination on the basis of [] gender . . . ." Cal. Educ. Code § 220. Title
IX includes similar prohibitions on sex discrimination. *See* 20 U.S.C. §§ 1681 *et seq.* The Court
will consider both sex-based discrimination claims under the same framework.[3]

The Supreme Court has explicitly stated that "'sexual harassment' is 'discrimination' in
the school context under Title IX," and "that student-on-student sexual harassment, if sufficiently
severe, can likewise rise to the level of discrimination actionable under the statute." *Davis Next
Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999); *see Jackson v.
Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) (citing *Davis*, 526 U.S. at 642) (noting that
"the private right of action encompasses intentional sex discrimination in the form of . . . sexual
harassment of a student by another student").

---

[3] The elements of a Section 220 claim for damages under the California Education Code, against
a defendant receiving state financial assistance, are similar to a Title IX claim against a
defendant receiving federal assistance. *See Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App.
4th 567, 606 (2008).

"A school that receives federal funding can be liable for an individual claim of student-on-student harassment, but only if (1) the school had substantial control over the harasser and the context of the harassment, (2) the plaintiff suffered harassment so severe that it deprived the plaintiff of access to educational opportunities or benefits; (3) a school official who had authority to address the issue and institute corrective measures for the school had actual knowledge of the harassment; and (4) the school acted with deliberate indifference to the harassment such that the indifference subjected the plaintiff to harassment." *Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1118–19 (9th Cir. 2023) (cleaned up).  Under Title IX, the harassment must be on the basis of sex.  *See Parents for Priv. v. Barr*, 949 F.3d 1210, 1228 (9th Cir. 2020).  "Peer harassment is less likely to satisfy the requirements that the misconduct breach Title IX's guarantee of equal access to educational benefits and have a systemic effect on a program or activity." *Davis*, 526 U.S. at 631.

### 1. Control over Harasser

Myles alleges that the sexual assault and harassment occurred at PVHS, during a "school-sponsored tutoring program" and at a time the SHC was staffed.  Compl. ¶¶ 17–19.  Misconduct that "occurs during school hours and on school grounds . . . is taking place 'under' an 'operation' of the funding recipient." *Davis*, 526 U.S. at 646.  For example, if "the harasser is under the school's disciplinary authority," then the "recipients of federal funding may be liable." *Id.* at 646–47.  This element is sufficiently alleged in the complaint.

### 2. Harassment so severe, pervasive, and offensive

Under Title IX, "a plaintiff must show harassment that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victims are effectively denied equal access to an institution's resources and

opportunities." *Id* at 631.  The harassment must "hav[e] a systemic effect on educational programs or activities" to be actionable for private damages.[4]  *Id.* at 653.  Not only must the harassment be "severe, pervasive, and objectively offensive," it must be motivated by the sex of the victim.  *See Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1124–25 (N.D. Cal. 2013).

Here, Myles alleges she was "sexually harassed and assaulted on the PVHS campus" by Day.  Compl. ¶¶ 17–19.  "Given the inherently sexual nature of rape and sexual assault, it is reasonable to conclude from such incidents that the perpetrator was motivated, at least in part, by victim's sex." *Lopez*, 5 F. Supp. 3d at 1125.  Myles was also "subjected to taunting and bullying by other PVHS students in direct retaliation for reporting Day's misconduct."  Compl. ¶ 32.  Myles "was forced to change her class schedule and her grades declined dramatically."  *Id.* ¶ 53.  The District argues "the fact that Plaintiff was bullied, and her grades declined are not indicative they were due to discrimination."  Dkt. 15 at 14.  The District also argues that "[d]amages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender."  *Id.* (citing *Davis*, 526 U.S. at 652).  While such conduct by itself may not be sufficient, here Myles alleges the taunting and bullying and change of schedule occurred after a sexual assault and harassment and "in direct retaliation for reporting" that misconduct.  Compl. ¶ 32.  The Court finds at this early pleading stage the totality of the alleged sexual harassment to be sufficiently severe, pervasive, and offensive to undermine Myles'

---

[4] *Compare M.M. v. San Juan Unified Sch. Dist.*, 2020 WL 5702265, at *7 (E.D. Cal. Sept. 24, 2020) (concluding that "the severity of the attacks and [defendant's] continued harassment of other girls, the mere fact that Plaintiff and [defendant] were kept in the same classroom and placed in the same car could reasonably be found to constitute pervasive, severe, and objectively offensive harassment"), *with Sanchez v. Brawley Elementary Sch. Dist.*, 719 F. App'x 723, 723 (9th Cir. 2018) (affirming summary judgment against plaintiff where "[t]he only harassment she 'link[ed]' to that denial was one physical incident in which a male student briefly flicked her chest (and she kneed him in the groin in response) and the denial included a "one-day suspension and brief removal from honor roll").

educational experience.  The Court also finds the sexual assault and harassment by Day were motivated by sex, as is the taunting and bullying for reporting Day's misconduct because it is plausible female students would more likely be the victims of Day.  Myles has sufficiently alleged facts to satisfy this element to survive dismissal at the pleading stage.

### 3.    Deprived of Educational Opportunity or Benefit

Not only must Myles allege harassment that is "severe, pervasive, and objectively offensive," the harassment must be such that it "undermines and detracts from the victim['s] educational experience, that the victim[ is] effectively denied equal access to an institution's resources and opportunities."  *Davis*, 526 U.S. at 631.  A plaintiff need not show "physical exclusion" to establish deprivation of opportunity and may establish deprivation by showing that the harassment "so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities."  *Id.* at 651.

Myles alleges that "she was forced to change her schedule, her grades dramatically declined, and she required extensive and ongoing counseling and psychological care."  Dkt. 17 at 17 (citing Compl. ¶¶ 53, 63, 31).  The District contends that "there are no allegations as to what educational opportunities and benefits Plaintiff wanted to participate in and was denied."  Dkt. 15 at 13.  Based on *Davis*, a deprivation can arise when harassment "so undermines and detracts from the victim['s] educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities."  *Davis*, 526 U.S. at 651.  "A deprivation can be found if there is a "concrete, negative effect" on the plaintiff's ability to receive an education."  *M.M.*, 2020 WL 5702265, at *6 (quoting *Davis*, 526 U.S. at 654).  Here, Myles' decline in grades, change of schedule in response to bullying arising from reporting sexual assault, and need for

counseling and psychological care arising from the incidents are reasonably construed as both concrete and negative in their effects on her education. *See id.* ("Examples of a negative impact on access may include dropping grades, being diagnosed with behavioral and/or anxiety disorders, and becoming homebound or hospitalized due to harassment, physical violence, or sexual assault."). Drawing inferences in favor of Myles at this stage, it is reasonable to conclude that her grades and psychological health are an indication of her educational experience. The Court finds that the facts alleged in the complaint are sufficient to show she has been denied equal access to the school's educational resources and learning opportunities.

### 4.    Actual knowledge

"Proof of actual notice is required only when the alleged Title IX violation consists of an institution's deliberate indifference to acts that 'do not involve official policy of the recipient entity.'" *Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 967 (9th Cir. 2010) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). In cases of sexual harassment, "it is the deliberate failure to curtail known harassment, rather than the harassment itself, that constitutes the intentional Title IX violation." *Id.*

The Ninth Circuit has not yet determined whether "prior sexual assault and/or conduct must be plaintiff specific" to satisfy the actual knowledge requirement. *See Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1030 (E.D. Cal. 2009) (quotation marks omitted). The district court in *Callahan* concluded that "the test is whether the appropriate official possessed enough knowledge of the harassment that he or she reasonably could have responded with remedial measures to address the kind of harassment upon which plaintiff's legal claim is based." *Id.* This Court follows that approach.

Myles alleges that "WCCUSD received numerous Title IX complaints between November

2017 and March 2022 alleging student sexual harassment and assault, peer bullying and retaliation." Compl. ¶ 45. The District allegedly "received multiple reports from female students during the 2021/2022 school year reporting Day's sexual harassment and assault." *Id.* ¶ 46. Myles further alleges that before the incidents, "multiple female students reported to administrators and staff that they were sexually harassed and assaulted by Day" and that "he had unsupervised access to Breana and sexually harassed and assaulted her." *Id.* ¶ 54. Myles also alleges that, during the post-incident meeting, defendant Kolb informed her parents that Day was already being investigated by police, and that "he would report [her] abuse to PPD." *Id.* ¶ 25. Viewing these allegations in Myles' favor, it is plausible that the District personnel knew of Days' conduct prior to the incidents and the risk he posed to female students.

Myles, however, does not allege that the District's personnel were aware of harassment of her by Day before either incident occurred. Myles' allegations include references to assaults and harassment of other female students at PVHS by Day, which present a risk to Myles, occurring before the events involving her. *See id.* ¶¶ 26–31. Based on Myles' allegations that, at minimum, the District was "aware of pervasive sexual harassment of female students on the PVHS campus" and "that [PPD] was already investigating prior student reports that Day sexually assaulted them on campus" (*id.* ¶¶ 25, 26), this Court finds that she has sufficiently alleged actual knowledge on the part of the District at this early pleading stage.

### 5.    Deliberate Indifference

In circumstances where "a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference subjects its students to harassment." *Davis*, 526 U.S. at 644. "[D]eliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it" and "requires more than mere negligence." *Id*

at 642, 645 (internal quotation marks and citations omitted).  For example, a school is deliberately indifferent "only where [its] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'"  *Ramser v. Univ. of San Diego*, 779 F. App'x 466, 469 (9th Cir. 2019) (quoting *Davis*, 526 U.S. at 648).

"Title IX liability generally flows from two periods of harassment: (a) when a school exhibits deliberate indifference before a harassing attack in a way that makes the student more vulnerable to the attack itself; or (b) when the school exhibits deliberate indifference after the attack which causes the student to endure additional harassment."  *Doe v. Blackburn Coll.,* 2012 WL 640046, at *7 (C.D. Cal. Feb. 27, 2012).  A Title IX claim can be based on actions occurring during either of these periods.  *See Jackson*, 544 U.S. at 173 (recognizing that retaliation against a victim for complaining of sex discrimination is actionable under Title IX); *Doe v. Bd. of Educ. of Glenbard Twp. High Sch. Dist. 87*, 2022 WL 2390940, at *3 (N.D. Ill. July 1, 2022) ("A school can be liable under Title IX for failing to take reasonable action to stop peer harassment after a student reports a sexual assault.").

The District's arguments appear to focus on post-incident events, including that the "District interviewed Plaintiff and had a meeting with Plaintiff's parents, assured the abuse would be reported and permitted Plaintiff to change her class schedule to accommodate her."  Dkt. 15 at 15.  The District characterizes this response as "not clearly unreasonable as it would prevent Plaintiff from interacting with her abuser and bullies."  *Id*.  Myles states that the District "did nothing despite having actual notice of Day's sexual misconduct with other female students *before* Day's assault on [her]."  Dkt. 17 at 14 (emphasis in original).  The District "reported the other assaults to the Pinole Police Department who were investigating."  Dkt. 19 at 5.

First, in the period before Myles was sexually harassed and assaulted by Day, the Court

finds the pre-incident allegations sufficient to plausibly show deliberate indifference at that point in time.  The District's only action in response to the multiple allegations was to report Day to the Pinole Police Department (PPD).  This notification, however, failed to warn potential victims such as Myles about Day's alleged predatory conduct or otherwise protect the potential victims from Day.  Myles and other female students were left vulnerable to an assault by Day.  Myles was indeed assaulted after the District's notification.

The District was "aware of pervasive sexual harassment of female students on the PVHS campus, including multiple incidents perpetrated by Day."  Compl. ¶ 26.  PPD was already investigating Day for sexual assaults.  *Id.* ¶ 25.  The District "failed to discipline Day and permitted [him] to remain on the PVHS campus with unsupervised access to female students, including Breana."  *Id.* ¶ 27.  The District also "failed to increase campus security or monitoring or otherwise address the immediate threat Day posed to the physical health and safety of Breana and other female students."  *Id*.  While the District argues that "[r]eporting incidents of abuse is the opposite of deliberate difference" (dkt. 19 at 5), the Court finds that it's plausible at the pleading stage that the District was deliberately indifferent by failing to do more.  Reporting Day's sexual assault to law enforcement is also not, at the pleading stage, dispositive of a lack of deliberate indifference in favor of the District.

Second, the Court considers the District's actions after the incidents.  Myles alleges that, after the assault, her "injuries were compounded by the fact that she was also subjected to taunting and bullying by other PVHS students in direct retaliation for reporting Day's misconduct" and was thus "forced to change her class schedule."  Compl. ¶ 32.

Moreover, the alleged harmful conduct occurred after the District was "aware of pervasive sexual harassment of female students on the PVHS campus, including multiple incidents

perpetrated by Day." *Id.* ¶ 26.  It is plausible that the District acted with deliberate indifference when it failed to take proper action in response to the reports of harassment.  Indeed, the District took no "corrective action" and did not limit, secure, or monitor the source of the known threat— Day.  *Id.* ¶¶ 25, 84, 86–87.  That failure to do more caused Myles to "undergo harassment" and made her "vulnerable to it."  *See Davis*, 526 U.S. at 642, 645.  The District's failure to prevent the assault and harassment as part of protecting female victim-students, could be reasonably found to be discrimination.  All of the corrective action seems focused on changing the condition of the school environment of the victim with the intention of keeping her safe.  Myles had to change her class schedule, and allegedly to her detriment.  The Court finds the allegations of deliberate indifference based on sex sufficient to state a claim, and denies the District's motion to dismiss as to the Title IX and Section 220 claims.

## C.  Disability-Based Discrimination Claims Against the District

Myles next brings claims against the District under Sections 201 and 202 of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131–12132, as well as under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  She withdrew her opposition to the District's motion to dismiss as to the ADA claim (the fourth cause of action).  Dkt. 31.  Accordingly, the Court evaluates only the claim under the Rehabilitation Act.

A claim of discrimination based on disability requires a showing by the plaintiff that "(1) [s]he is an individual with a disability; (2) [s]he is otherwise qualified to receive the benefit; (3) [s]he was denied the benefits of the program solely by reason of [her] disability; and (4) the program receives federal financial assistance."  *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).  Additionally, "[t]o recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant,"

which may be proven by a showing of "deliberate indifference." *Id.* at 1138.  Here, the District concedes that Myles is an individual with a disability, is qualified to participate in or receive the benefit of the school's services, and the District receives federal funding.  The parties disagree whether (i) she was excluded from services, programs, or activities or otherwise discriminated against based on her disability, and (ii) the District acted with deliberate indifference.

### 1.    Discrimination Based on Disability

The District argues that there "are no allegations of any prior complaints involving mistreatment of Plaintiff" and that there "were [] no complaints or reports concerning her lack of access to appropriate services, programs or activities" because of her disability.  Dkt. 15 at 18. Myles argues that she is disabled and describes incidents of sex-based harassment, assault, and discrimination, without a nexus to the disability.  She alleges that Defendants "were aware of pervasive sexual harassment of female students on the PVHS campus" and refers to incidents involving "female students" as victims at PVHS.  Compl. ¶¶ 26–29.  However, Myles fails to draw a plausible connection between her disability and either the incidents or the actions or inactions of the District.  As other courts in this Circuit have found, in instances of sexual assault or harassment of a disabled student, the alleged discrimination must be by reason of the disability to plead a disability discrimination claim.  *See, e.g.*, *J.R. by & Through Ringer v. Lakeport Unified Sch. Dist.*, 2018 WL 6726999, at *3 (N.D. Cal. Dec. 21, 2018); *M.P.G. by & through Guzman v. Antioch Unified Sch. Dist.*, 2023 WL 4053794, at *1, *3 (N.D. Cal. June 16, 2023).

The Court finds that Myles has not alleged facts sufficient to show that she "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity" and "such exclusion, denial of benefits, or discrimination was by reason of [her] disability."  *E.R.K. ex rel. R.K. v. Hawaii*

*Dep't of Educ.*, 728 F.3d 982, 992 (9th Cir. 2013) (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004)).

### 2.      Deliberate Indifference

The Ninth Circuit has held that "deliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course," but rather "a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Duvall*, 260 F.3d at 1139.

The District contends that it did not act with deliberate indifference.  Myles argues that "officials were aware of the discrimination and failed to adequately respond." Dkt. 17 at 18 (citing Compl. ¶¶ 26–29, 35).  She also alleges that the District "failed to respond to student reports of Day's sexual harassment and assaults as required by board policies intended to prevent recurrence."  Compl. ¶ 92.  Myles' allegations, however, are about "student sexual harassment," "peer bullying and student sexual harassment," and defendants' knowledge that Day "was sexually harassing and assaulting female students on campus." *Id.* ¶ 39.  Notably, they do not show knowledge or a failure to act with respect to disability discrimination.  Further, Myles does not allege that the District knew "that a harm to a federally protected right is substantially likely" on the basis of her disability and failed "to act upon that the likelihood." *Duvall*, 260 F.3d at 1138. The Court therefore finds that Myles has not sufficiently alleged facts that the District acted with deliberate indifference with respect to disability discrimination, nor provided facts of any discrimination on the basis of her disability.

### 3.      Hostile Environment

Myles alleges that "[b]y their actions or inactions in denying access to educational services and by subjecting Plaintiff to a hostile educational environment, WCCUSD violated [] the

Rehabilitation Act."  Compl. ¶ 97.  The District argues that the Ninth Circuit "has refused to recognize claims of a hostile education environment."  Dkt. 15 at 17 (citing *Toma v. Univ. of Hawaii*, 304 F. Supp. 3d 956, 963–64 (D. Haw. 2018)).  Indeed, the Ninth Circuit has not ruled on whether a claim of hostile educational environment is actionable under the ADA or Rehabilitation Act.  *See Garedakis v. Brentwood Union Sch. Dist.*, 756 F. App'x 669, 671 (9th Cir. 2018); *Breyer v. Pac. Univ.*, 2021 WL 3829966, at *2 (9th Cir. Aug. 27, 2021).  Myles has cited no binding authority to bring such a claim, and as discussed above does not plead sufficient facts to support such a claim.  The Court finds that Myles has failed to state a claim for relief based on disability discrimination created by a hostile environment.

Defendant's motion to dismiss is granted as to the ADA claim without leave to amend, and the motion is granted as to the Rehabilitation Act claim with leave to amend.

### D.  California State Law Claims

Myles' complaint includes claims against all defendants under California law, including negligence, intentional infliction of emotional distress (IIED), and violation of the California's Child Abuse and Neglect Reporting Act (CANRA).  The District claims immunity under the California Tort Claims Act (CTCA).[5]  *See* Cal. Gov't Code §§ 810 *et seq*.

### 1.    California Tort Claims Act

Under the CTCA, unless otherwise provided by statute, "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Cal. Gov't Code § 815.  A public entity may be directly liable for a failure to discharge a statutory duty imposed on the entity itself.  Cal. Gov't Code § 815.6.

---

[5] The District cites to authority under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 *et seq*.  Dkt. 32.  Those FTCA cases are easily distinguished as there is no federal defendant in this case.

Additionally, under Section 815.2, a public entity may be vicariously liable, or derivatively liable, for "an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  Cal. Gov't Code §§ 815.6, 815.2(a); *see AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 638 (9th Cir. 2012).  If, however, the employee is immune from liability, then the public entity is also immune.  Cal. Gov't Code § 815.2(b).  A public employee is immune from liability "for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  Cal. Gov't Code § 820.2.

## 2. Negligence Claim Against the District

The District moved to dismiss Myles' negligence claim on the grounds that the District is immune under the CTCA.  The District carries the burden in showing they are entitled to immunity.  *See AE ex rel.* 666 F.3d at 638.  For both direct liability and derivative liability, the Court considers first whether a duty is owed, and then whether immunity applies.  *See Williams v. State of California*, 34 Cal. 3d 18, 22 (1983).

<u>Direct Liability Arising from Mandatory Duty Under Section 815.6</u>

Myles cites to the California Education Code for the District's statutory duties.  As noted by the California Supreme Court, California Education Code Section 44807 imparts a duty on individuals but not on a public entity such as a school district.  *Hoff v. Vacaville Unified Sch. Dist.*, 19 Cal. 4th 925, 939 (1998).  Section 48200 imposes a duty on "each parent, guardian, or other person having control or charge of the pupil" to send the pupil to school, but does not refer to any duty of school districts.  Cal. Educ. Code § 48200.  The Court finds that Myles has not identified a statutory basis to create direct liability for the District under Section 815.6.

Derivative Liability Arising under Section 815.2

Myles also asserts a theory of vicarious liability under Section 815.2.  Cal. Gov't Code § 815.2.  The inquiry under Section 815.2 focuses on the conduct of employees and duties imposed on those employees rather than duties imposed on the entity itself.  The Court will determine whether discretionary act immunity applies to the employees and thus also to the District.

First, the Court finds that school personnel have a duty to supervise students at school during school hours.  *See Dailey v. Los Angeles Unified Sch. Dist.*, 2 Cal. 3d 741, 747 (1970); *Iverson v. Muroc Unified Sch. Dist.*, 32 Cal. App. 4th 218, 228 (1995); Cal. Educ. Code § 44807.  The District may be vicariously liable for breaches of this duty by employees.  *Dailey*, 2 Cal. 3d at 747.

Second, regarding immunity, "[g]overnment officials are liable for the negligent performance of their ministerial duties but are not liable for their discretionary acts within the scope of their authority."  *Muskopf v. Corning Hosp. Dist.*, 55 Cal. 2d 211, 220 (1961) (cleaned up).  The California Supreme Court concluded:

> although a basic policy decision [] may be discretionary and hence warrant governmental immunity, subsequent ministerial actions in the implementation of that basic decision still must face case-by-case adjudication on the question of negligence. Indeed, most of these cases, like the instant situation, involve failure to warn of fore-seeable, latent dangers flowing from the basic, immune decision.

*Johnson v. State*, 69 Cal. 2d 782, 797 (1968).  In *Johnson*, the California Supreme Court proposed and applied the distinction "between the 'planning' and 'operational' levels of decisionmaking." *Id.* at 794.  As Myles notes, the California Supreme Court subsequently applied this approach in *Lopez v. Southern California Rapid Transit District*, finding that where the California Legislature made a policy decision by enacting a statute, immunity was not established for actions taken by an

employee to implement that policy (at the demurrer stage).  40 Cal. 3d 780, 794 (1985).[6]  Another court in this Circuit denied a motion to dismiss based on immunity under Section 820.2 for seizure of animals, where the decision of whether to seize was discretionary but "operational decisions as to how to implement the seizure" were not immunized.  *Huemer v. Santa Cruz Cnty. Animal Shelter Found.*, 2022 WL 2276891, at *8 (N.D. Cal. June 23, 2022); *see also Wilkins v. Lowe*, 2020 WL 3065119, at *8 (C.D. Cal. Apr. 21, 2020) ("Here, Plaintiff attacks not a prison policy decision governing the protection of inmates generally but rather a prison official's specific alleged deliberate indifference to an asserted risk of harm to a specific inmate. Section 820.2 does not apply to this claim.").

Here, the District contends that disciplinary decisions are discretionary and thus are immune.  Dkt. 32 at 8.  As noted and reiterated by the Supreme Court of California, a semantic approach to whether an act is discretionary is disfavored.  *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 793 (1985) (citing *Johnson*, 69 Cal. 2d 782).  In this case, Myles is not challenging an enacted policy or other planning decision, but rather acts or omissions of employees that are not immune from suit.  While the District relies upon a number of board policies and administrative regulations, Myles does not challenge those policies nor refer to them to oppose dismissal.  *See* dkts. 32, 33.  Additionally, Myles cites *Regents of University of California v. Superior Court*, which distinguished "a university's decision to create specific programs and protocols to identify and respond to threats of violence on campus" from "the manner in which the university and its employees executed those programs with respect to an individual student whom [the plaintiff]

---

[6] In *Lopez v. Southern California Rapid Transit District*, the Legislature enacted a statute requiring "that bus drivers must act to protect passengers from assaults by fellow passengers," but "an individual bus driver's decision concerning what form of protective action to take in a particular case" is ministerial and not immune under Section 820.2.  40 Cal. 3d at 794.

alleges presented a foreseeable threat of harm." 29 Cal. App. 5th 890, 915–16 (2018). The District's attempt to distinguish *Regents* is without merit. These distinctions raised by the District do not squarely address the nature of the decisions made by personnel. The Court finds the reasoning in *Regents* persuasive and that Myles' allegations are directed to ministerial acts.

The Court denies the District's motion to dismiss as to the negligence claim on the grounds of immunity. The issue of discretionary immunity, however, may be raised again at a later stage of the case after the record has been developed through discovery.

### 3.      IIED Claim Against the District

Myles withdrew her opposition to the District's motion to dismiss her IIED claim. Dkt. 31. The Court grants the District's motion to dismiss as to the IIED claim, without leave to amend.

### 4.      CANRA-Based Claim Against the District, Kleiman, and Kolb

Myles' eighth cause of action against all Defendants alleges a violation of California's Child Abuse and Neglect Reporting Act (CANRA). Cal. Penal Code §§ 11164 *et seq*. Under CANRA, "any reasonable suspicion of child abuse or neglect must be reported by mandatory reporters to a responsible authority." *Endy v. Cnty. of Los Angeles*, 975 F.3d 757, 761 (9th Cir. 2020) (citing Cal. Penal Code §§ 11165.7, 11165.9, 11166). Mandatory reporters under the CANRA include "administrative officers" of a public school. Cal. Penal Code § 11165.7(a)(5). While CANRA itself does not support a private right of action, it may support a claim under a theory of negligence per se. *See Smith v. Tobinworld*, 2016 WL 3519244, at *9 (N.D. Cal. June 28, 2016); *Yates v. E. Side Union High Sch. Dist.*, 2021 WL 3665861, at *7 (N.D. Cal. Aug. 18, 2021). The complaint does not allege "negligence per se" but refers to a mandatory duty imposed by statute. Defendants' motions to dismiss are granted for the respective CANRA-based claims, each with leave to amend. If Myles intends to bring a CANRA-based claim, she must assert it

explicitly under a theory for which there is a private right of action, in the operative pleadings.

### E.  Motion to Strike

Kleiman and Kolb also moved to strike portions of the complaint corresponding to particular claims.  A motion under Rule 12(f) may seek to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Rule 12(f) is not meant to "create[e] redundancies" with Rule 12(b) to dismiss claims.  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).  The individual defendants move to strike portions of the complaint in which the Court has granted the motion to dismiss with leave to amend, or alternatively the claim is dismissed with prejudice.  The Court, therefore, denies Kleiman and Kolb's motion to strike as premature, without prejudice, until after the amended pleading has been filed.

### F.  Request for Judicial Notice

The District requested judicial notice of 14 exhibits to the supplemental brief at Dkt. 32, pursuant to Federal Rule of Evidence 201.  *See* Dkt. 32-1.  Myles did not address the District's request in her response to the supplemental brief.  These exhibits include the District's board policies and administrative regulations available on the District's website.  *Id.* at 1.  Under Rule 201, a court may take judicial notice of facts that are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  This includes "matters of public record."  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

Myles has not challenged these materials nor the facts contained therein, and her arguments do not invoke any of those materials.  The Court grants the District's request to take judicial notice of the materials but not the facts contained therein that may be subject to reasonable dispute.

## IV.    CONCLUSION

The Court grants the District's motion to dismiss in part as to the ADA claim and the IIED claim, without leave to amend.  The Court grants the District's motion to dismiss in part as to the CANRA-based claim and Rehabilitation Act claim, with leave to amend.  The Court denies the District's motion to dismiss in part as to the sex discrimination claims under Title IX and the California Education Code, and the negligence claim.

The Court grants defendants Kleiman and Kolb's motion to dismiss as to Myles' Section 1983 claim based on a theory of statutory violation of Title IX, without leave to amend.  The Court grants the individual defendants' motion to dismiss as to the Section 1983 claim based on a failure to train theory, the Section 1983 claim based on a ratification theory, and the CANRA-based claim, all with leave to amend.

To the extent Myles wishes to amend her complaint, amendments are due by April 11, 2024.

**IT IS SO ORDERED.**

Dated:  March 28, 2024

Alex G. Tse
United States Magistrate Judge